CKB & ASSOCIATES, INC., Petitioner

v.

MOORE McCORMACK PETROLEUM, INC., Respondent.

No. C–5430.

Supreme Court of Texas.

July 1, 1987.
Rehearing Denied Sept. 16, 1987.

W.S. Barron, Jr., P. Michael Jung, Strasburger & Price, Dallas, for petitioner.

Craig W. Weinlein and James A. Ellis, Jr., Carrington, Coleman, Sloman & Blumenthal, Dallas, for respondent.

SPEARS, Justice.

This is a summary judgment case. The trial court granted partial summary judgment for Moore McCormack Petroleum, Inc. (MMP) on the ground that certain claims of CKB & Associates, Inc. (CKB) were barred by a prior settlement agreement. The court of appeals, in an unpublished opinion, affirmed the judgment of the trial court. We reverse the judgment of the court of appeals and remand this cause for trial.

This controversy arises out of a crude oil processing agreement between OKC Corp. Liquidating Trust (OKC) and MMP. With MMP's consent, OKC assigned the processing agreement to CKB. As assignee, CKB agreed to process and refine 15,000 barrels of oil daily for $2.50 per barrel. The processing agreement required CKB to use its "best efforts" to process the specified daily amounts of refined products with a 1% tolerance in quality and quantity.

The processing agreement also required CKB to obtain a $4,000,000 irrevocable documentary letter of credit payable to MMP. Under the terms of the letter of credit, the issuing bank, Mercantile National Bank, was obligated to honor MMP's sight drafts when accompanied by MMP's sworn statement that CKB had not delivered the volume or quality of refined products required in the processing agreement.

Shortly after CKB began performance of the processing agreement, MMP began claiming deficiencies in the volume and quality of the refined products. MMP advised CKB of its intention to draw on the letter of credit for the amounts claimed to be due on the alleged deficiencies. In response, CKB sought a temporary injunction to prevent MMP from drawing on the letter of credit and to enjoin the bank from honoring MMP's drafts. CKB claimed that the processing agreement only required it to use its "best efforts" to process the specified volumes. MMP responded that the processing agreement obligated CKB to deliver the specified volumes with only a 1% maximum variation.

Four days after CKB's petition was filed, MMP presented three sight drafts with supporting documents to the bank. Two drafts, one for $1,396.231.20 and one for $547,708.93, were for quality deficiencies while the third, for $1,658,590.10, was for volume deficiencies. Later that same day, the trial court denied CKB's application for a temporary injunction.

Two days after the presentment of the sight drafts, CKB and MMP entered into a partial compromise and settlement agreement. The settlement agreement compromised certain quality issues between the parties while expressly preserving all volume claims and defenses. Under the terms of the agreement, CKB agreed to pay MMP $942,500 and "cause" the bank to honor the $1,658.590.10 deficient volume draft. In return, MMP agreed to withdraw the two quality sight drafts, release CKB from the quality deficiencies complained of in the documents accompanying the drafts, and acknowledge that CKB was the owner of the deficient quality refined products. CKB released MMP from any liability arising from its presentment of the two quality drafts. The penultimate sentence of the settlement agreement recited: "Neither party waives any claims or defenses as to whether CKB produced and delivered the volumes of products as called for in the processing agreement."

CKB amended its petition after the execution of the settlement agreement to plead four new causes of action. CKB alleged that:

1. MMP wrongfully presented the volume draft because the "best efforts" clause prevented the processing agreement from having a minimum barrel standard;

2. MMP willfully, knowingly, falsely, and fraudulently represented to CKB and the bank that there was a net deficiency in volume;

3. MMP would be unjustly enriched if it is allowed to keep the proceeds of the draft;

4. MMP converted the funds.

MMP moved for partial summary judgment on the four causes of action. The trial court severed CKB's other claims and

rendered summary judgment for MMP on these four causes of action. The trial court held as a matter of law that CKB's causes of action were precluded by the settlement agreement; CKB's "causing" the bank to honor the draft; waiver; and estoppel. The court of appeals affirmed.

The standard for review of summary judgments is well established. A defendant moving for summary judgment must expressly present and conclusively prove all essential elements of its defense as a matter of law; there can be no genuine issue of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Montgomery*, 669 S.W.2d at 311. Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

We must first consider whether MMP proved as a matter of law that the settlement agreement precluded the causes of action arising out of collection of the proceeds from the letter of credit. The settlement agreement clearly gives MMP immediate possession of the funds but is silent on the issue of their ultimate retention. The function of letters of credit makes this distinction important.

The very object of a letter of credit is to provide a near foolproof method of placing money in the beneficiary's hands when he complies with the terms of the letter itself. *Itek Corp. v. First National Bank of Boston*, 730 F.2d 19, 24 (1st Cir.1984). Parties to a contract may use a letter of credit in order to make certain that contractual disputes wend their way towards resolution with money in the beneficiary's pocket rather than in the pocket of the contracting party. *Id.; Emery-Waterhouse Co. v. Rhode Island Hospital Trust Nat'l Bank*, 757 F.2d 399, 404 (1st Cir.1985). Comment 2 to Tex.Bus. & Com.Code Ann. § 5.114 (Vernon 1968) recognizes that the benefi-

ciary's immediate right of possession does not preclude dispute over the ultimate retention by providing: "In the event of honor, an action by the customer against the beneficiary will lie by virtue of ... the underlying contract." *See also Emery-Waterhouse Co.*, 757 F.2d at 404. Without this rule, the beneficiary of the letter of credit would be the ultimate arbiter of compliance with the underlying contract and the commercial viability of a letter of credit would be destroyed.

■ Since causes of action arising out of the wrongful presentation of a letter of credit are not inconsistent with a beneficiary's right of immediate possession of the disputed funds through the mechanism of a valid letter of credit, the next question is whether the settlement agreement alters this conclusion. Numerous times throughout the settlement agreement, the parties indicated their intent and agreement to preserve all claims and defenses as to volume. The $1,658,590.10 draft was compensation for alleged deficiencies in volume. Presumably, the draft adequately compensated MMP for its volume deficiency claims. If CKB is prevented from recovering these funds, the clear intent of the settlement agreement is thwarted. MMP would have no incentive to bring its volume claim, and CKB would be unable to recover the presumably total volume deficiency compensation even if the trial court determined that CKB's volume allegations were correct and that MMP was not entitled to the funds.

Utilization of a rule of contract construction also prevents the conclusion that the settlement agreement precludes these causes of action as a matter of law. The maxim *expressio unius est exclusio alterius*, meaning that the naming of one thing excludes another, though not conclusive, is applicable to these facts. *Morrow v. Morgan*, 48 Tex. 304, 308 (1877); *Phillips Petroleum Co. v. Gillman*, 593 S.W.2d 152, 154 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). The settlement agreement released MMP from any claims and causes of action arising out of the presentation of the two quality drafts while claims arising out of the presentment of the volume draft

were not mentioned. This silence raises an inference that the parties did not intend to preclude the volume draft presentment causes of action by the settlement agreement. Consequently, CKB's causes of action are not inconsistent as a matter of law with the settlement agreement.

 We must next consider whether CKB's causes of action are inconsistent as a matter of law with CKB's agreement to "cause" the honor of the draft. As mentioned earlier, one of the primary functions of letters of credit is to guarantee that the disputed funds will be in the possession of the beneficiary rather than the contracting party pending the determination of who has the ultimate right to those funds. *Emery-Waterhouse Co.*, 757 F.2d at 404; *Itek Corp.*, 730 F.2d at 24. At the time of the execution of the settlement agreement, CKB had sharply disputed MMP's right to the possession of these funds *pendente lite*. Though its request for an injunction had been denied, CKB still had the option to appeal that denial and seek a temporary injunction pending the appeal to preserve the court of appeals' jurisdiction. CKB's agreement to "cause ... [the] Bank ... to honor the draft presented it in the amount of $1,658,590.10 ... by MMP under the letter of credit" can be construed as CKB agreeing to cease disputing MMP's right to temporary possession of the funds *pendente lite*. In this suit, CKB is challenging whether the terms of the underlying processing agreement authorized MMP's collection of the proceeds under the letter of credit. Thus, CKB's causes of action are not inconsistent as a matter of law with its agreement to "cause" the honor of the drafts.

 We must last consider whether the settlement agreement precludes CKB's claims as a matter of law under the doctrines of estoppel and waiver. "No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel." *Gulbenki-*

*an v. Penn*, 252 S.W.2d 929, 932 (Tex.1952). Waiver has been defined as "intentional conduct inconsistent with the assertion of a known right." *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980). As previously discussed, CKB's causes of action are not inconsistent with the settlement agreement as a matter of law; therefore, summary judgment based on waiver and estoppel was improper.

MMP did not conclusively prove all the essential elements of its defense as a matter of law. The evidence raises several issues of material fact concerning the intent of the parties to the settlement agreement. Accordingly, the court of appeals erred in affirming the trial court's summary judgment. We reverse the judgment of the court of appeals and remand this cause for trial.

MAUZY, J., notes his dissent.