**SRS PRODUCTS CO., INC., Appellant,**

v.

**LG ENGINEERING CO., LTD. and Heritage Bank, Appellees.**

No. 14–98–00938–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 10, 1999.

Scott Rothenberg, Bellaire, for appellants.

Thomas M. Fulkerson, Robert A. Axelrad, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is an accelerated appeal from the trial court's denial of an application for a temporary injunction to enjoin the payment and presentment of a standby letter of credit. Appellant SRS Products Co., Inc. ("SRS") requested a temporary restraining order and a temporary injunction preventing appellee Heritage Bank from paying on a standby letter of credit presented by appellee LG Engineering Co., Ltd ("LGE"). The trial court granted the temporary restraining order, but denied the temporary injunction. SRS appealed and we granted a temporary injunction preventing payment on the letter of credit during the pendency of this appeal. We affirm the trial court's denial of the temporary injunction and dissolve our temporary injunction.

### Factual and Procedural Background

In August 1996, LGE contracted with SRS to purchase a commercial refrigeration unit for use by Thai Plastics Corporation, in Thailand. SRS contracted to design and construct the unit and guaranteed that all materials furnished would conform to LGE's specifications and drawings. SRS also guaranteed that the unit would be fit and sufficient for the purpose for which it was intended, of new and good materials, design and workmanship, and free from defects. LGE agreed to pay in excess of $2.4 million for the unit. SRS agreed to repair or replace free of cost to LGE any part or parts that failed "in the normal use and service and under proper operation, because of faulty design or workmanship or defective materials, within twelve (12) months after being placed in normal operation or within eighteen (18) months from the date of shipment, whichever is sooner, unless otherwise expressly stated in the body of this order." The parties amended the warranty period to make the warranty effective for two years from the date of shipment, or fifteen months after the date of final acceptance.

Originally, the parties' contract called for SRS to issue a performance bond in the amount of ten percent of the contract price to secure its warranty obligations to LGE. At SRS' request, however, LGE agreed to allow SRS to post a standby letter of credit in place of a performance bond, with the only proviso for drawing against it being a written declaration by an executive officer of LGE that SRS had "refused or failed to perform [warranty work] in accordance with the terms and conditions of [LGE's] Purchase Order" for the refrigeration unit. SRS arranged for Heritage Bank to issue a standby letter of credit for $240,147 (10% of the contract price) to cover the cost of potential warranty repairs.[1] After Heritage Bank issued the letter of credit, LGE released a final payment of over $800,000 to SRS.

The refrigeration unit arrived in Thailand in early September 1997. From the outset, LGE experienced numerous and sundry problems with the unit, including misalignment of the gearbox-motor compressor unit, misalignment of shafts and motors, skid bolt openings, severe vibrations in the compressor and other component parts, defective welds on piping, and improper functioning of the controller unit. When LGE called on SRS to make the necessary repairs under the warranty, SRS took the position that the defects occurred in the "delivery and installation phase" and that the warranty covered only defects occurring in the "operational phase." SRS sent repair personnel to Thailand only on condition that LGE pay in advance for their services. Despite repeated efforts to repair and replace the non-working parts, the unit would not function. In December 1997, SRS notified LGE that because LGE (or third parties acting at LGE's direction) had worked on, changed, or modified the unit, the warranty was void.

In May 1998, LGE made a demand on the standby letter of credit, providing Heritage Bank with the written declaration that SRS had failed or refused to perform warranty work on the unit. Under the terms of the letter of credit, Heritage Bank had five days to respond. Before the fifth day, SRS filed suit in the 151st Judicial District Court of Harris County, seeking a temporary restraining order, a temporary injunction and a permanent injunction preventing Heritage Bank from honoring the letter of credit and prohibiting LGE from making demand on it. The ancillary judge granted a temporary restraining order. After a two day hearing in July 1998, at which both sides presented evidence and made arguments, the trial court denied SRS' application for temporary injunction. SRS filed this accelerated appeal and sought injunctive relief from this court during the pendency of the appeal. On August 27, 1998, we granted a temporary injunction blocking payment on the letter of credit pending the decision of this court.

### Standard of Review

 The denial of a temporary or permanent injunction is within the sound discretion of the trial court. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993). Our review of the trial court's action is limited to determining whether the action constituted a clear abuse of discretion. *See id.* A trial court abuses its discretion by (1) acting arbitrarily and unreasonably, without reference to guiding rules or principles, or (2) misapplying the law to the established facts of the case. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not exist where the trial court bases its decision on conflicting evidence and evidence appears in the record which

---

1. The letter of credit provided that Heritage Bank would pay upon LGE's written demand, "plus five (5) banking days any amount claimed ... against [LGE's] written declaration that [SRS] had refused or failed to perform the warranty obligation under the contract signed by a[sic] executive officer of [LGE]."

reasonably supports the trial court's decision. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978).

### *The Independence Principle Underlying Letters of Credit*

■ A letter of credit is an engagement by its issuer to honor demands for payment by the beneficiary upon compliance with the conditions specified in the letter. Tex. Bus. & Com.Code Ann. § 5.103(a)(1) (Vernon 1994 & Supp.1998). "The purpose of a letter of credit is to assure payment when its own conditions have been met, irrespective of disputes that may arise between the parties concerning performance of other agreements which comprise the underlying transaction." *Sun Marine Terminals, Inc. v. Artoc Bank and Trust, Ltd.,* 797 S.W.2d 7, 10 (Tex.1990). This principle of independence is the central feature of a letter of credit and is essential to its commercial viability.

Unlike the obligation of a guarantor, which generally does not mature unless the principal debtor has actually defaulted, the facts of the underlying transaction are generally not relevant to the obligation of an issuer of a letter of credit. An issuer's obligation to pay is triggered when the beneficiary presents documents that conform to the terms of the letter of credit. Tex. Bus. & Com.Code Ann. § 5.114(a) (Vernon 1994 & Supp.1998). Except in very rare circumstances, courts will not recognize defenses or claims of the account party against the beneficiary as grounds for enjoining presentment or payment on a letter of credit.

■ The general rule is that an injunction will not issue to block payment of a letter of credit where the beneficiary has presented conforming documents. The Uniform Commercial Code, as adopted in Texas, recognizes only three instances in which a court may enjoin the honoring of an otherwise conforming letter of credit: (i) when documents appear on their face to comply with the terms of a credit, but a required document does not in fact conform; or (ii) when documents appear on their face to comply with the terms of a credit but a required document is in fact forged; or (iii) when there is fraud in the transaction. *See* Tex. Bus. & Com.Code Ann. § 5.114(b); *AIG Risk Management v. Motel 6 Operating L.P.,* 960 S.W.2d 301, 305 (Tex.App.—Corpus Christi 1997, no writ). Here, SRS does not claim that the written declaration LGE made to Heritage Bank was nonconforming, nor does SRS otherwise dispute that LGE made the requisite presentation to Heritage Bank to draw on the letter of credit; rather, SRS contends that LGE's declaration was false and, therefore, constitutes fraud that vitiates the entire transaction, entitling it to injunctive relief under section 5.114(b), Texas Business and Commerce Code.

### *Requisite Showing for "Fraud in the Transaction" Under U.C.C. Section 5.114(b)*

SRS argues that LGE's presentment to Heritage Bank was fraudulent because LGE knew, or should have known, (1) that the problems for which it sought repairs and replacement were not, in fact, warranty obligations because they occurred in the "installation phase of the project and not in normal use and service and under proper operations as required by the warranty;" and (2) that LGE's material modifications to the unit voided the warranty obligations altogether. SRS contends that although LGE made the requisite representation that SRS had defaulted in its warranty obligations, "it was not an honest representation" and therefore, the trial court abused its discretion in refusing to enjoin payment and presentment.

■ Establishing "fraud in the transaction" under section 5.114(b) requires more than a showing of untruthful statements in presentment documents. *See Philipp Bros. Inc. v. Oil Country Specialists, Ltd.,* 787 S.W.2d 38, 40–41 (Tex.1990). The wrongdoing must be so "egregious, intentional, and unscrupulous" that it viti-

ates the entire transaction such that the legitimate purposes of the independence of the issuer's obligation would no longer be served. *GATX Leasing Corp. v. DBM Drilling Corp.*, 657 S.W.2d 178, 182 (Tex. App.—San Antonio 1983, no writ); *see also Paris Sav. & Loan Ass'n v. Walden*, 730 S.W.2d 355, 365 (Tex.App.—Dallas 1987, writ dism'd w.o.j.). The exception is applicable only in very limited situations where there has been an intentional perversion of the truth in order to induce another to part with something of value or surrender a legal right. To invoke this narrow exception, there must be evidence of trickery, dishonesty, deception or other wrongdoing that rises to the level of fraud. In most cases finding wrongdoing sufficient to qualify as "fraud in the transaction," the beneficiary of the letter of credit has utterly failed to perform its obligations or has engaged in a deceptive or dishonest scheme. *See e.g., Philipp Bros.*, 787 S.W.2d at 40 (upholding an injunction where substandard condition of goods for which letter of credit had been issued rendered entire inventory virtually worthless, destroying the legitimate purpose of the letter of credit); *see also United Bank Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 392 N.Y.S.2d 265, 360 N.E.2d 943, 946 (1976) (payment on letter of credit enjoined because the beneficiary shipped old and damaged goods instead of the agreed upon goods); *Sztejn v. J. Henry Schroder Banking Corp.*, 177 Misc. 719, 31 N.Y.S.2d 631 (N.Y.Sup.Ct.1941) (pre-Code case in which payment of a letter of credit was enjoined because the beneficiary had shipped rubbish instead of the goods called for by the agreement).

 Typically, the beneficiary of the letter of credit is the seller and the account party is the purchaser. This case presents an interesting variation in that the beneficiary of the letter of credit (LGE) is the purchaser and the account party (SRS) is the seller. LGE paid the entire purchase price for the refrigeration unit, a sum in excess of $2.4 million. At issue is the "reserve" that the parties contracted to set aside via the letter of credit to back SRS' warranty obligations. LGE made demands for warranty work and gave SRS numerous opportunities to perform under the warranty. Despite repeated efforts to remedy the defects and effect the necessary repairs, the unit did not work and SRS refused to honor the warranty. While SRS argues that its warranty obligations were never triggered or, alternatively, that they were voided, and that LGE knew or should have known as much by virtue of its own actions in modifying the equipment, SRS points to no facts which show that the letter of credit was being used as a vehicle for fraud. In fact, the evidence shows that LGE was using the letter of credit exactly as the parties had contemplated at the time it was issued. SRS' steadfast contention that it has no liability on the warranty, even if true, is insufficient to justify enjoining payment on the letter of credit under section 5.114(b). A dispute over the existence or scope of warranty obligations does not amount to fraud in the transaction, and therefore, does not provide grounds to enjoin payment of a letter of credit issued to secure performance of those obligations. To allow an account party to obtain an injunction based on a mere contractual dispute with the beneficiary would destroy the commercial viability of letters of credit and, in this case, would undermine the rationale for utilizing a letter of credit—to shift leverage back to the purchaser in demanding performance by the seller of the warranty obligations.

The obligation of Heritage Bank (the issuer) to pay LGE (the beneficiary) is entirely independent of any obligation (or lack thereof) of SRS to LGE under the contract between SRS and LGE.[2] Thus, it

---

2. *See* Comment 1 to section 5.114, stating that "[t]he letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by this Article as independent of the underlying contract between the customer and the beneficiary.".

would fly in the face of Article Five to enjoin payment on the letter of credit based solely on a dispute between the bank's customer and the beneficiary over underlying contractual obligations.[3] Given that the issuing bank could not defend against the beneficiary by setting up the defenses the bank's customer had against the beneficiary, it would be anomalous if the customer could nonetheless enjoin payment of the letter of credit on the ground that its own obligations to the beneficiary had not been triggered or were in dispute. While there is a clear disagreement between the parties concerning the existence and scope of the warranty's coverage, there is nothing in the record to suggest anything more than a mere contractual dispute. Texas law does not provide for injunctive relief to preclude payment on a letter of credit under such circumstances.

### Existence of Conflicting Evidence

■ At the temporary injunction hearing, the trial judge heard extensive testimony from both sides concerning the nature of the various defects and problems with the refrigeration unit and whether the repair of those defects qualified as warranty work. Even if the evidence SRS presented could somehow be construed as evidence of fraud in the transaction, LGE presented more than enough controverting evidence on this issue to support the trial court's decision. The existence of this conflicting evidence precludes us from saying that the trial court abused its discretion in denying the temporary injunction. *See Davis,* 571 S.W.2d at 862.

### Inadequate Remedy at Law and Irreparable Harm

■ In addition to meeting the requirements of section 5.114(b), SRS was also required to demonstrate that it had no adequate remedy at law and that absent a

temporary injunction, it would suffer irreparable injury. *See GATX,* 657 S.W.2d at 180–81 (holding that a court may enjoin if the requisites of section 5.114(b) are met and common law requirements for injunctive relief are satisfied.). To prove inadequate remedy at law, SRS was required to show that its damages are incapable of calculation or that LGE is incapable of responding in damages. *See Haq v. America's Favorite Chicken Co.,* 921 S.W.2d 728, 730 (Tex.App.—Corpus Christi 1996, writ dism'd w.o.j.). Similarly, irreparable harm can be demonstrated by showing that damages cannot be measured by any certain pecuniary standard. *See id.* At the temporary injunction hearing, SRS failed to demonstrate either. The amount in dispute is the amount that LGE sought to draw under the letter of credit, and is clearly calculable. Furthermore, LGE presented uncontroverted testimony that it is financially secure and capable of repaying the full amount of the letter of credit if it were later required to do so. Inasmuch as SRS failed to demonstrate irreparable harm and inadequate remedy at law, it was not entitled to injunctive relief. For these additional reasons, the trial court did not abuse its discretion in denying SRS' application for temporary injunction.

We affirm the trial court's denial of the temporary injunction and dissolve the injunction entered by this court on August 27, 1998. We direct the clerk of this court to issue the mandate of the court immediately.

---

**3.** *See* Texas Business and Commerce Code § 5.114(a), which explicitly provides that the issuer's duty to honor drafts accompanied by documents conforming to the terms of the letter of credit arises *"regardless of whether the goods or documents conform to the underlying contract for sale or to other contract between the customer and the beneficiary."* (emphasis added).