**Reversed and Remanded and Opinion filed July 23, 2024**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00643-CV

### BAYPORT POLYMERS LLC D/B/A BAYSTAR, Appellant

### V.

### CB&I LLC, Appellee

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2023-35378**

## O P I N I O N

This is an accelerated appeal from the trial court's grant of an application for a temporary injunction to enjoin the payment and presentment of a standby letter of credit. Appellant, Bayport Polymers LLC d/b/a Baystar ("Baystar"), alleged that appellee, CB&I, LLC ("CB&I"), owed approximately $75 million in liquidated damages for failing to meet performance requirements or minimum acceptance criteria. After Baystar unsuccessfully attempted to draw on the letter of credit, CB&I sought a temporary injunction to prevent Baystar from making an allegedly

fraudulent draw on the letter of credit that would, among other things, violate the contractually bargained-for dispute resolution procedure. After a two-day hearing, the trial court granted the temporary injunction. In three issues, Baystar contends that the trial court erred in granting the temporary injunction, arguing (1) the trial court did not make the requisite findings under section 5.109 of the Texas Business and Commerce Code, (2) Baystar had a colorable right to draw on the letter of credit, and (3) Baystar did not commit material fraud that vitiated the transaction. Because CB&I failed to establish that the alleged fraud committed by Baystar was so egregious that it vitiated the entire transaction, we reverse the trial court's order temporarily enjoining Baystar from drawing on the letter of credit. *See Philipp Bros., Inc. v. Oil Country Specialists, Ltd.*, 787 S.W.2d 38, 40–41 (Tex. 1990).

## *Background*

CB&I is a subsidiary of McDermott International, Ltd. and specializes in engineering and building complex projects. In 2017, CB&I entered into two large Engineering, Procurement, and Construction contracts with Baystar worth a combined $2.5 billion. The first project was to engineer and construct Baystar's ethane cracker facility in Port Arthur, Texas. The second project—the project in dispute—was to engineer and construct Baystar's high-density polyethylene plant in Bayport, Texas, referred to as the Borstar Bay3 Project ("BB3 Project").

One key metric in delivering the BB3 Project to Baystar was reaching Ready For Hydrocarbon In Completion ("RFHI Completion"). This is the point at which Baystar could use and introduce hydrocarbons into the facility. According to the contract, CB&I committed to achieving RFHI Completion on or before the Ready For Hydrocarbon In Completion Milestone ("Milestone") 1,110 days after the effective date of the contract, or October 8, 2021. The contract required CB&I to post a standby letter of credit to guarantee performance of certain obligations. The

2

contract provided that CB&I was to pay liquidated damages for each calendar week it failed to achieve RFHI Completion by the Milestone. The maximum total liability for liquidated damages for delay was limited to 6% of the contract price. In the event CB&I was liable for liquidated damages, Baystar, at its sole discretion, could either (1) invoice CB&I for liquidated damages, which CB&I would be required to pay within 30 days; (2) withhold from CB&I amounts that were otherwise due and payable in the amount of the liquidated damages; or (3) collect on either letter of credit issued in the amount of the liquidated damages. The contract permitted the parties to make changes but prohibited amendments, supplements, or modifications that were not in writing and signed by authorized representatives of both parties.

CB&I worked on both projects but ran into significant delays due to the COVID-19 pandemic. Despite the delays, CB&I eventually delivered the ethane cracker project on April 26, 2021. During the course of the projects, Baystar and CB&I executed more than 70 change orders. On May 2, 2022, the parties executed Change Order 68. In its relevant parts, Change Order 68 provided that (1) the parties agreed to an extension of the Milestone date whereby the new date would be July 31, 2022; (2) the contract price would be increased by $26 million; (3) CB&I could receive three incentive payments worth $9 million for meeting certain milestones; and (4) the liquidated damages for failure to achieve RFHI Completion would be accelerated.[1] CB&I did not achieve RFHI Completion by July 31, 2022 as required

---

[1] The original liquidated damages provision provided that:

[CB&I] shall pay to [Baystar] liquidated damages . . . for each calendar week (or prorated portion thereof) of delay in which [CB&I] has failed to achieve READY FOR HYDROCARBON IN COMPLETION by the READY FOR HYDROCARBON IN COMPLETION MILESTONE, at the following percentages . . . until READY FOR HYDROCARBON IN COMPLETION has been achieved:

- zero percent (0%) of the CONTRACT PRICE per week for week one (1) through week eight (8)

3

by Change Order 68.

On August 1, 2022, the president of Baystar wrote a letter to CB&I reminding CB&I of the "current contract terms." The letter stated:

> We note that the READY FOR HYDROCARBON IN COMPLETION MILESTONE was July 31, 2022 upon which delay liquidated damages began to accrue pursuant to the CONTRACT.
>
> [BAYSTAR] hereby reserves all rights and remedies under and with respect to the CONTRACT, including with respect to any delay liquidated damages owed by [CB&I].

CB&I did not file a change order request, and no other adjustment was ever made to the Milestone date. According to CB&I, it did not seek to formally extend

---

- zero point one percent (0.1%) of the CONTRACT PRICE per week for week nine (9) through week twelve (12)

- zero point two percent (0.2%) of the CONTRACT PRICE per week for week thirteen (13) through week sixteen (16)

- zero point three percent (0.3%) of the CONTRACT PRICE per week for week seventeen (17) through week twenty (20)

- zero point four percent (0.4%) of the CONTRACT PRICE per week for week twenty-one (21) through week twenty-four (24)

- zero point five percent (0.5%) of the CONTRACT PRICE per week for week twenty-five (25) and each week thereafter.

In Change Order 68, the accrual rate of liquidated damages was replaced as follows:

- zero percent (0%) of the CONTRACT PRICE per week for week one (1) through week two (2);

- zero point zero eight one percent (0.081%) of the CONTRACT PRICE for week three (3);

- zero point one six three percent (0.163%) of the CONTRACT PRICE for week four (4);

- zero point five six nine percent (0.569%) of the CONTRACT PRICE for week five (5);

- zero point seven three two percent (0.732%) of the CONTRACT PRICE per week for week six (6) and each week thereafter.

4

RFHI Completion or enforce other contractual rights because it relied upon oral representations made by Baystar's president. CB&I maintained that Baystar's president assured CB&I on multiple occasions that Baystar would not assess liquidated damages provided that CB&I completed the BB3 Project "quickly and safely." Baystar's president, however, denied making these affirmative representations.

By the end of October 2022, CB&I surpassed the liquidated damages cap and still had not achieved RFHI Completion. The parties discussed the anticipated RFHI Completion for several months. Ultimately, in June 2023, Baystar exercised its right to obtain liquidated damages by drawing on the letter of credit. Baystar sent a letter to the issuer stating that (1) CB&I was in default; (2) CB&I owed Baystar liquidated damages; (3) the liquidated damages owed arose out of or related to a breach of contract; and (4) Baystar was entitled to payment of $75,386,233.32 as liquidated damages. Baystar also initiated arbitration proceedings for both projects.

On June 8, 2023, CB&I filed suit against Baystar seeking a temporary restraining order and preliminary injunction to prevent Baystar from drawing on the letter of credit. The trial court entered a temporary restraining order the same day. Subsequently, the trial court held a two-day temporary injunction hearing. At the conclusion of the hearing, the trial court entered a temporary injunction. In the relevant parts of the order, the trial court found that "CB&I has shown a probable right to relief against Baystar in that it has adduced evidence to support claim of material fraud under section 5.109 of the Texas Business and Commerce Code." The trial court relied on the following facts: (1) Baystar fraudulently induced CB&I to relinquish its rights to submit change orders to formally extend RFHI Completion; (2) Baystar induced CB&I into spending more funds on the BB3 Project; (3) Baystar certified materially fraudulent representations in its written application to draw on

5

the letter of credit for liquidated damages; and (4) Baystar's claim for liquidated damages is subject to a binding arbitration agreement.

### *Issues Presented*

On appeal, Baystar presents three issues for review:

1. Did the trial court err by temporarily enjoining Baystar from drawing on a letter of credit without finding that CB&I was more likely than not to succeed on its claim of material fraud?

2. Did Baystar have a colorable right to draw on a letter of credit when the plain text of the contract between Baystar and CB&I provides such a right?

3. Did Baystar commit material fraud that vitiated an entire $1.2 billion transaction by exercising a contractual right to draw on a letter of credit to obtain $75 million in liquidated damages owed under the contract?

### *Governing Law & Standard of Review*

A letter of credit is a definite undertaking by an issuer (usually a bank) to a beneficiary at the request of an applicant to honor a documentary presentation by payment or delivery of an item of value. Tex. Bus. & Com. Code § 5.102(10). Rights and obligations under a letter of credit are independent of any underlying contract dispute between the beneficiary and the applicant. *Id.* § 5.103(d). This principle of independence is the central feature of a letter of credit and is essential to its commercial viability. *SRS Prods. Co. v. LG Eng'g Co.*, 994 S.W.2d 380, 384 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The bank must honor a presentment that "appears on its face strictly to comply with the terms and conditions of the letter of credit." Tex. Bus. & Com. Code § 5.108(a). However, payment of a letter of credit does not determine the ultimate right to retain the funds as between the beneficiary

and the applicant. *See CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987). The general rule is that an injunction will not issue to block payment of a letter of credit where the beneficiary has presented conforming documents. *SRS Prods.*, 994 S.W.2d at 384. The standard for injunctive relief is high, and the burden remains on the applicant to show, by evidence and not by mere allegation, that such relief is warranted. Tex. Bus. & Com. Code § 5.109 cmt. 4.

The Uniform Commercial Code recognizes only three instances in which a court may enjoin the honoring of an otherwise conforming letter of credit: (1) a required document is forged, (2) a required document is materially fraudulent, or (3) honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant. Tex. Bus. & Com. Code § 5.109(b). Only the second and third instances are relevant to this appeal. If an applicant claims that a required document is forged or materially fraudulent or that honor of the presentation would facilitate a material fraud, a court may temporarily enjoin payment of a letter of credit if the court finds that:

(1) the relief is not prohibited under the law applicable to an accepted draft or deferred obligation incurred by the issuer;

(2) a beneficiary, issuer, or nominated person who may be adversely affected is adequately protected against loss that it may suffer because the relief is granted;

(3) all of the conditions to entitle a person to the relief under the law of this state have been met; and

(4) on the basis of the information submitted to the court, the applicant is more likely than not to succeed under its claim of forgery or material fraud and the person demanding honor does not qualify for protection under Subsection (a)(1).

*Id.*; *Philipp Bros.*, 787 S.W.2d at 40–41 (providing that payment of a letter of credit

7

may not be enjoined unless there is evidence of a material fraud by the beneficiary on the applicant or the bank).

If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). A review of section 5.109 indicates that the UCC necessarily incorporates general principles to obtain a temporary injunction. *See* Tex. Bus. & Com. Code § 5.109(b)(3) (providing that the court must find that "all of the conditions to entitle a person to the relief under the law of this state have been met"); *see also SRS Prods.*, 994 S.W.2d 380 at 386. Thus, to obtain a temporary injunction, an applicant must also demonstrate that it (1) has a cause of action against the opposing party; (2) has a probable right on final trial to the relief sought; and (3) faces probable, imminent, and irreparable injury in the interim. *See Butnaru*, 84 S.W.3d at 204 (enumerating the requirements to obtain a temporary injunction); *see also Hoist Liftruck Mfg. v. Carruth–Doggett, Inc.*, 485 S.W.3d 120, 122 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (same).

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Temporary injunctions are an extraordinary remedy and do not issue as a matter of right. *Id.* (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam)). When reviewing the particulars of a temporary injunction, we are not limited to the reasons stated by the trial court. *Hsin-Chi-Su v. Vantage Drilling Co.*, 474 S.W.3d 284, 298 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). We review all of the evidence presented and indulge all legitimate inferences from the evidence in the light most favorable to the temporary injunction. *Id.*

We review a trial court's decision to grant or deny a temporary injunction for

an abuse of discretion. *Butnaru*, 84 S.W.3d at 204. A trial court abuses its discretion when it rules without reference to guiding rules and principles or when its decision is unreasonable or arbitrary. *Transcor Astra Grp. S.A. v. Petrobras Am., Inc.*, 650 S.W.3d 462, 482 (Tex. 2022).

## *Discussion*

As indicated above, Baystar raises three issues on appeal, asserting (1) the trial court erred by enjoining Baystar from drawing on the letter of credit without finding that CB&I was more likely than not to succeed on its claim of material fraud, (2) Baystar had a colorable right to draw on a letter of credit when the plain text of the contract permitted such, and (3) Baystar did not commit material fraud. We address each issue raised by Baystar in turn.

## I.     There is No Prescribed Format for the Trial Court's Order Under Section 5.109

In its first issue, Baystar challenges the form of the trial court's order. Baystar claims that the plain text of section 5.109 governs the specific form of the trial court's order. Baystar argues that the trial court determined that an injunction was warranted under section 5.109 but did not make the "more likely than not" finding required by the statute. Even though the standard for injunctive relief under section 5.109 is high, Baystar suggests that the trial court did nothing more than find that CB&I satisfied the generic standard for injunctive relief; that is, that CB&I alleged a cause of action, had a probable right to relief, and faced irreparable injury. *See Butnaru*, 84 S.W.3d at 204. CB&I counters that the trial court's order is consistent with section 5.109 because "no magic language" is required. CB&I suggests that the trial court's order is based on extensive and credible evidence rather than mere allegations, all necessary findings are implied by the order, and the order details specific factual findings. We agree with CB&I only to the extent that the statute does

9

not set out a prescribed format for the written order.

The requirements for granting a temporary or permanent injunction are set forth in section 5.109. *See* Tex. Bus. & Com. Code § 5.109(b). To temporarily or permanently enjoin the issuer from honoring a presentation, the trial court is required to find, among other things, that "the applicant is more likely than not to succeed under its claim of forgery or material fraud." *Id.* But, neither the statute nor any other provision of the UCC sets forth a prescribed format for the written order. When interpreting court orders, we avoid elevating form over substance. *Compare Serafine v. Crump*, 665 S.W.3d 93, 109 (Tex. App.—Austin 2023, pet. pending) (providing that the procedures governing recusal on a party's motion and recusal on a judge's motion do not "set[] out a prescribed format for the written order, and when interpreting court orders, we avoid elevating form over substance"); *Tex. Dep't of Pub. Safety v. J.H.J.*, 274 S.W.3d 803, 810–11 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (providing that the right to seek expunction of one's arrest records, which is governed by strict statutory requirements, should not turn upon whether the trial court uses magic words in its discharge order from felony community supervision); *and In re Att'y Gen. Of Tex.*, 162 S.W.3d 739, 742 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (explaining that the Family Code does not require the child support master's proposed order to contain language of recommendation and holding that invalidating the order because it did not contain the words "recommended" or "proposed" elevates form over substance); *with* Tex. R. Civ. P. 683 (stating that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained.").

Here, the trial court granted the temporary injunction sought by CB&I. In its

10

relevant parts, the order provides:

> The Court therefore FINDS that CB&I has shown a probable right to relief against Baystar in that it has adduced evidence to support claim that a material fraud [occurred] under Section 5.109 of the Texas Business and Commerce Code based on the following facts:
>
> 1) The Court finds that Baystar fraudulently induced CB&I to relinquish its rights to submit change orders to formally extend the Ready for Hydrocarbon in ("RFHI") date after July 31, 2022 . . .
>
> 3) The Court finds that Baystar induced CB&I into spending more funds[] on the project including but not limited to []approximately $22 million[] on FTE wages
>
> 4) The Court finds that Baystar certified materially fraudulent representations in its written application to draw on the [letter of credit] that CB&I is liable for liquidated damages
>
> 5) The Court finds that (a) Baystar's claim for liquidated damages is subject to a binding arbitration agreement under the parties' contract; (b) Baystar has instituted arbitration proceedings regarding the liquidated damages for which it seeks to draw on CB&I's letter of credit; and (c) Baystar's draw on CB&I's letter of credit, if permitted, would cause the destruction of all or an essential part of the subject matter to be arbitrated.

Invalidating the trial court's order because it does not contain the words "more likely than not" elevates form over substance, especially when the trial court enumerated several factual findings to support its order. *See Serafine*, 665 S.W.3d at 109; *Tex. Dep't of Pub. Safety*, 274 S.W.3d at 810–11; *In re Att'y Gen. of Tex.*, 162 S.W.3d at 742. We believe that a trial court's decision to temporarily or permanently enjoin the issuer from honoring a presentation should not turn on whether the trial court uses "magic words." We therefore overrule Baystar's first issue.

## II. Section 5.109's Fraud Exception is Not Limited to Lack of Colorable Right

As its second issue, Baystar contends that the trial court erred in granting the temporary injunction because Baystar had a right to draw on the letter of credit under the contract. Baystar maintains that the parties' contract provided a colorable right to draw on the letter of credit, and Baystar had the option to do so if CB&I failed to meet the performance requirements or minimum acceptance criteria. CB&I asserts that section 5.109's fraud exception is not limited to lack of colorable right and insists that the trial court correctly reviewed evidence of the underlying circumstances in determining Baystar's alleged fraudulent acts. We agree with CB&I only to the extent that section 5.109's fraud exception is not limited to lack of colorable right. *See generally* Tex. Bus. & Com. Code § 5.109.

The supreme court has interpreted the fraud exception in section 5.114,[2] determining that the nature of fraud is correctly described as:

> The situation of fraud in which the wrong doing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served.

*Philipp Bros.*, 787 S.W.2d at 40 (quoting *GATX Leasing Corp. v. DBM Drilling Corp.*, 657 S.W.2d 178, 182 (Tex. App.—San Antonio 1983, no writ)). This court has upheld that standard and explained that the fraud exception is "applicable only in limited situations where there has been an intentional perversion of the truth in order to induce another to part with something of value or surrender a legal right."

---

[2] Acts 1999, 76th Leg., ch. 4, § 1 amended Chapter 5 effective September 1, 1999. The former Chapter 5, Letters of Credit, consisting of §§ 5.101–.117, was amended as Chapter 5, Letters of Credit, consisting of §§ 5.101–.118. The 1999 amendments increased the applicant's burden to show entitlement to injunctive relief when asserting fraud against the other party to the underlying transaction. *Compare* Act of May 29, 1983, 68th Leg., R.S., ch. 442, § 13, 1983 Tex. Gen. Laws 2511, 2576, *with* Tex. Bus. & Com. Code § 5.109. Section 5.109 stems from the pre-1999 version of section 5.114. *See* Act of March 23, 1999, 76th Leg., R.S., ch. 4, § 10, 1999 Tex. Gen. Laws 7, 21 (amendments applicable only to letters of credit issued on or after September 1, 1999); Tex. Bus. & Com. Code § 5.109. Both sections nonetheless concern entitlement to injunctive relief when asserting fraud.

*SRS Prods.*, 994 S.W.2d at 384.

On appeal, Baystar relies solely on an official comment to section 5.109 to support its position. In the third paragraph of comment 1 to section 5.109, it states:

> Material fraud by the beneficiary occurs only when the beneficiary has no colorable right to expect honor and where there is no basis in fact to support such a right to honor. The section indorses articulations such as those stated in *Intraworld Indus. v. Girard Trust Bank*, 336 A.2d 316 (Pa. 1975), *Roman Ceramics Corp. v. People's Nat. Bank*, 714 F.2d 1207 (3d Cir. 1983), and similar decisions and embraces certain decisions under Section 5-114 that relied upon the phrase "fraud in the transaction."

Tex. Bus. & Com. Code § 5.109 cmt. 1. We note that an official UCC comment like this one is not legally binding, but it is persuasive authority concerning interpretation of the statute's language. *See Prosper Fla., Inc. v. Spicy World of USA, Inc.*, 649 S.W.3d 661, 671 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *Fetter v. Wells Fargo Bank Tex.*, 110 S.W.3d 683, 687 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). We decline to follow persuasive authority when the supreme court has specifically interpreted the nature of this type of fraud. *See Philipp Bros.*, 787 S.W.2d at 40; *see also SRS Prods.*, 994 S.W.2d at 384–85 (following the fraud standard articulated in *Philipp Bros.*).

While colorable right to draw on a letter of credit is certainly relevant to establishing material fraud, it is not the standard followed by this court in analyzing fraud under the terms of section 5.109. *See Philipp Bros.*, 787 S.W.2d at 40; *see also* Tex. Bus. Com. Code § 5.109, State Bar Committee cmts (2021) (providing that both *Philipp Brothers* and the third paragraph of comment 1 support the nature of fraud that vitiates the entire transaction as the type of fraud that justifies an injunction against honor). Baystar's reliance on an official comment is misplaced, and Baystar does not otherwise make a cogent legal argument or cite to legal authority suggesting

that a different standard other than the one articulated in *Philipp Brothers* applies when an applicant claims fraud by the beneficiary in the presentation.

We therefore overrule Baystar's second issue.

### III.   Any Alleged False Statements in Making Presentment Did Not Vitiate the Entire Transaction

In its third issue on appeal, Baystar argues that the trial court erred in granting the temporary injunction because the trial court's findings that CB&I "adduced evidence" of fraudulent acts cannot support a determination of material fraud under section 5.109. As presented, Baystar's argument is not a model for clarity, but we interpret Baystar's issue as challenging whether CB&I, as the applicant, provided evidence that Baystar, the beneficiary, committed material fraud as contemplated by section 5.109(b). CB&I claims that Baystar's attacks on the trial court's findings "do not defeat the propriety of the trial court's injunction." We begin by examining the fraud alleged in this case to determine if it warrants interference with payment of the letter of credit. *SRS Prods.*, 994 S.W.2d at 384.

The trial court's order granting the temporary injunction provided that CB&I adduced evidence to support its claim of material fraud under section 5.109, finding that (1) "Baystar fraudulently induced CB&I to relinquish its right to submit change orders"; (2) "Baystar induced CB&I into spending more funds"; (3) "Baystar certified materially fraudulent representations in its written application to [the issuer]"; and (4) "Baystar's claim for liquidated damages is subject to a binding arbitration . . . and Baystar's draw on CB&I's letter of credit, if permitted, would cause the destruction of all or an essential part of the subject matter to be arbitrated." Baystar classifies the trial court's findings into three categories: (1) "breach of contract" theory, (2) "fraud in the presentment" theory, and (3) "fraud in the

14

transaction" theory. We address each of these findings in turn and examine whether the trial court abused its discretion in enjoining Baystar from drawing on the letter of credit.

**"Breach of Contract" Theory.** In enjoining Baystar from drawing on the letter of credit, the trial court found that "Baystar's claim for liquidated damages is subject to a binding arbitration . . . and Baystar's draw on CB&I's letter of credit, if permitted, would cause the destruction of all or an essential part of the subject matter to be arbitrated." Baystar urges that this finding conflicts with established law for two reasons: (1) payment of a letter of credit does not determine the ultimate right to retain the funds, and (2) a breach of contract alone cannot justify issuing an injunction. CB&I reasons that the trial court's findings are consistent with applicable law because Baystar's actions relating to the arbitration create two different grounds for injunction: (1) Baystar's actions illustrate material fraud in representing that CB&I was in default, and (2) Baystar could not invoke a binding arbitration and then seek to draw on the letter of credit.

As discussed, letters of credit are independent of any underlying contract dispute between the beneficiary and the applicant. *See* Tex. Bus. & Com. Code § 5.103(d) (providing that rights and obligations of an issuer to the beneficiary under a letter of credit are independent of the contract). As between the beneficiary and the applicant, payment of a letter of credit does not determine the ultimate right to retain the funds, but causes of action arising out of the wrongful presentation of a letter of credit are "not inconsistent with a beneficiary's right of immediate possession of the disputed funds through the mechanism of a valid letter of credit." *See CKB*, 734 S.W.2d at 655. There are only three instances in which a court may enjoin the honoring of an otherwise conforming letter of credit: (1) a required document is forged, (2) a required document is materially fraudulent, or (3) honor of the

presentation would facilitate a material fraud by the beneficiary on the issuer or applicant. Tex. Bus. & Com. Code § 5.109(b). To allow a party to obtain an injunction based on a "mere contractual dispute" would "destroy the commercial viability of letters of credit." *SRS Prods.*, 994 S.W.2d at 385.

In this case, the contract between the parties specifies the procedure for resolving any dispute that should arise. CB&I states that Baystar never notified CB&I of the arbitration and did not inform the issuer of arbitration. CB&I suggests that these efforts evidence a fraudulent scheme to improperly draw on the letter of credit. But, the issuer's obligation to pay Baystar upon presentment is entirely independent of any obligation of Baystar to CB&I (or vice versa) under the contract. *See id.* It would "fly in the face of Article 5" to enjoin payment of the letter of credit based solely on a dispute between Baystar and CB&I over underlying contractual obligations. *See id.* at 385–86; *see also* Tex. Bus. & Com. Code § 5.108(a) ("[A]n issuer *shall* honor a presentation that . . . appears on its face strictly to comply with the terms and conditions of the letter of credit.") (emphasis added). While there is a clear disagreement between the parties regarding entitlement (or lack thereof) to the liquidated damages, Texas law does not provide injunctive relief to preclude payment on a letter of credit for contractual disputes.

Accordingly, the evidence presented demonstrates that the trial court's finding was based on a contractual dispute between the parties, which is insufficient to support the fraud necessary to interfere with the independence of the letter of credit. *SRS Prods.*, 994 S.W.2d at 385

**"Fraud in the Presentment" Theory.** One of the trial court's findings supporting the injunction relates to false statements in the presentment documents. Specifically, the trial court determined that Baystar "certified materially fraudulent

16

representations in its written application to draw on the [letter of credit]." Baystar's presentment to the bank provided that (1) CB&I is in default, (2) CB&I owes Baystar liquidated damages, (3) CB&I owes Baystar amounts arising out of or relating to a breach of obligation under the contract, and (4) Baystar is entitled to payment of $75,386,122.32.

In this case, the trial court's findings that the statements in the presentment documents were false do not support its conclusion that Baystar committed material fraud such that the letter of credit should be declared void. *See Philipp Bros.*, 787 S.W.2d 40. Even assuming that the statements in Baystar's presentment documents were false, false statements in the presentment documents are insufficient to warrant enjoining payment of a letter of credit. *Id.* at 40–41 ("To maintain the strong commercial viability of letters of credit, presentment should not be enjoined because the beneficiary's compliance with the terms of payment under the letter of credit contains untrue statements unless those statements also constitute fraud under section 5.114(b)(2)."); *see also* Tex. Bus. & Com. Code § 5.108(a) (providing that an issuer must honor a presentation that appears on its fact strictly to comply with the terms and conditions of the letter of credit.). Establishing material fraud requires more than a showing of untruthful statements in the presentment documents. *See SRS Prods.*, 994 S.W.2d at 384.

Accordingly, we conclude that any untruthful statements in the presentment documents were insufficient to warrant enjoining payment of the letter of credit. *See Philipp Bros.*, 787 S.W.2d at 40–41.

**"Fraud in the Transaction" Theory.** The remaining two of the trial court's findings determined that Baystar fraudulently induced CB&I into relinquishing rights to submit change orders and spending more funds. Baystar contends that the

17

trial court's injunction was improper for three reasons: (1) the alleged representations conflict with the plain language of the contract, (2) the alleged representations are too vague and indefinite, and (3) the alleged representations do not vitiate the entire transaction. CB&I urges that it provided sufficient evidence of the requisite fraud to support an injunction under section 5.109.

"Fraud in the transaction" requires a showing that the wrongdoing is so "egregious, intentional, and unscrupulous" that it vitiates the entire transaction. *SRS Prods.*, 994 S.W.2d at 384–85. Generally, the wrongdoing sufficient to qualify as "fraud in the transaction" requires a showing that "the beneficiary of the letter of credit has utterly failed to perform its obligations or has engaged in a deceptive or dishonest scheme." *See generally Philipp Bros.*, 787 S.W.2d at 40 (upholding an injunction where substandard condition of goods for which letter of credit had been issued rendered entire inventory virtually worthless, destroying the legitimate purpose of the letter of credit).

> To establish fraud, a plaintiff must show that
>
> (1) the defendant made a false, material representation; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth"; (3) "the defendant intended to induce the plaintiff to act upon the representation"; and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury.

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019) (quoting *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)). Only the fourth element is at issue in this appeal. To establish the fourth element, "the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable." *Orca Assets*, 546 S.W.3d at 653 (citing *Grant Thornton LLP v. Prospect High Income Fund*, 314

18

S.W.3d 913, 923 (Tex. 2010)).

In this case, Baystar alleges that it had a right to draw on the letter of credit under the plain language of the parties' contract, and even if Baystar or its president did make affirmative representations concerning the assessment of liquidated damages (or lack thereof), CB&I was not justified in relying on any alleged representations when the plain language of the contract prohibited oral modifications. CB&I argues that we should disregard the plain language of the contract because it provided evidence of the requisite fraud and Baystar's fraudulent scheme.

Reviewing the record, even if we assume for sake of argument that Baystar made material representations that Baystar knew to be false and intended to induce CB&I to act upon the representations, the evidence does not support that CB&I's reliance on such representations was justifiable. *See Barrow-Shaver*, 590 S.W.3d at 496. We recognize a long-standing principle that a "party claiming fraud has a duty to use reasonable diligence in protecting its own affairs." *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962); *see also Orca Assets*, 546 S.W.3d at 654. A "failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Thigpen*, 363 S.W.2d at 251. A plaintiff therefore may not "blindly rely on a representation by a defendant" when the plaintiff's knowledge, experience, and background alert it to investigate the defendant's representations before acting in reliance on those representations. *Orca Assets*, 546 S.W.3d at 654.

In this case, CB&I is a highly sophisticated corporation with global operations. CB&I is a self-proclaimed "world leader in engineering and building complex projects in energy, petrochemicals, and energy transition" for over 100 years. Considering CB&I's knowledge, experience, and background, it was not

reasonable for CB&I to rely on Baystar or its president's representations concerning the assessment of liquidated damages (or lack thereof) when the contract between the parties specifically prohibited amendments, supplements, or modifications that were not in writing and signed by authorized representatives of both parties.[3] *Thigpen*, 363 S.W.2d at 251. The evidence indicates that CB&I was aware that adjustments to the contract had to be in writing because the parties executed at least 70 change orders throughout the course of both projects. While it is unclear why CB&I failed to submit a change order when it knew it was not going to achieve RFHI Completion by the Milestone date, a "failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Id.*

Accordingly, we conclude that the any alleged fraud in the transaction did not amount to egregious fraud vitiating the entire $1.2 billion transaction. *Philipp Bros.*, 787 S.W.2d at 40. CB&I's reliance on the alleged affirmative representations were

---

[3] In its appellate brief, CB&I attempts to distinguish pre-contracting representations and post-contracting waivers and modifications. CB&I alleges that parties may modify a contract by a subsequent oral agreement, even though the agreement provides that it can modified only by a written agreement. CB&I first relies on *Shields Limited Partnership v. Bradberry*, which provides that a party's right under a nonwaiver provision may be waived expressly or impliedly. *See* 526 S.W.3d 471, 482–83 (Tex. 2017). CB&I also cites *Pointe West Center, LLC v. It's Alive, Inc.*, which explains that "[a] written contract not required by law to be in writing, may be modified by a subsequent oral agreement even though it provides it can be modified only by a written agreement." *See* 476 S.W.3d 141, 151 (Tex. App.—Houston [1st Dist.] 2015, pet denied). But, when a contract is required by law to be in writing, the rules are different. A contract that is required to be in writing may not be rescinded by oral agreement. *Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984); Tex. Bus. & Com. Code § 26.01(b)(6) (providing that an agreement which is not to be performed within one year from the date of making the agreement must be in writing). Though CB&I states that the BB3 Project contemplated a multi-year construction, it nonetheless proposes that the project "could conceivably be performed within a single year." When parties enter into a contract without explicitly mentioning a time for performance, the relevant inquiry is whether the parties intended to complete the contract within a year. *Metromarketing Servs., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 195–96 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Hall v. Hall*, 308 S.W.2d 12, 16 (Tex. 1957)). Reviewing the contract, the parties did not contemplate the BB3 Project being completed in less than a year. As discussed, CB&I initially committed to achieving RFHI Completion within 1,110 days after October 8, 2021. *See Givens*, 671 S.W.2d at 878.

not reasonable or justified.

We note that we are not limited to the reasons stated by the trial court. *Hsin-Chi-Su*, 474 S.W.3d at 298. But, reviewing all of the evidence presented and indulging legitimate inferences in favor of the temporary injunction, CB&I failed to establish the requisite fraud necessary under section 5.109. *See id.*; *see also Philipp*, 787 S.W.2d at 40. We therefore sustain Baystar's third issue.

### *Conclusion*

We conclude that the trial court abused its discretion in enjoining payment of the letter of credit because it misapplied the law to the established facts of the case. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We therefore reverse the trial court's grant of the application for a temporary injunction and remand this cause for trial on the merits.


/s/    Frances Bourliot
        Justice


Panel consists of Justices Jewell, Bourliot, and Poissant.